UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-CR-1005-KMM-1
CASE NO. 20-CR-1005-KMM-2


UNITED STATES OF AMERICA,　　　　　　) Page 1-20
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　vs.　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　) Key West, Florida
　　YUHAO WANG and JIELUN ZHANG,　　　 ) June 4, 2020
　　　　　　　　　　　　　　　　　　　　) 2:00 P.M.
　　　　　　　　Defendants.　　　　　　　)


TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE KEVIN M. MOORE
U. S. DISTRICT JUDGE


APPEARANCES:

For the Government:　　　JONATHAN KOBRINSKI - via Zoom
　　　　　　　　　　　　　United States Attorney's Office
　　　　　　　　　　　　　99 NE 4th Street
　　　　　　　　　　　　　Miami, Florida  33128

For the Defendant Wang:　JUAN MICHELEN
　　　　　　　　　　　　　Assistant Federal Public Defender
　　　　　　　　　　　　　One East Broward Boulevard
　　　　　　　　　　　　　Suite 1100
　　　　　　　　　　　　　Fort Lauderdale, Florida  33301

For the Defendant Zhang: HECTOR FLORES
　　　　　　　　　　　　　Barzee Flores, P.A.
　　　　　　　　　　　　　Courthouse Center, Penthouse 1
　　　　　　　　　　　　　40 NW Third Street
　　　　　　　　　　　　　Miami, Florida  33128

Reported by:　　　　　　 VERNITA ALLEN-WILLIAMS
Vernita_Allen-Williams　 Official Court Reporter
@flsd.uscourts.gov　　　 United, States District Court
　　　　　　　　　　　　　400 North Miami Avenue
　　　　　　　　　　　　　Miami, Florida  33128


STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

THE COURT:  All right.  This is United States of America vs. Yuhao Wang and Jielun Zhang.

Counsel, note your appearances.

MR. KOBRINSKI:  Jonathan Kobrinski on behalf of the United States.

MR. MICHELEN:  And good afternoon, Your Honor. Juan Michelen, Assistant Federal Defender, on behalf of Mr. Lyuyou Wang.

MR. FLORES:  Good afternoon, Your Honor.  Hector Flores, appointed on behalf of Jielun Zhang.

THE COURT:  Good afternoon to you all.  And, Mr. Zhang, can you hear me?

DEFENDANT WANG:  Yes.

THE COURT:  And, Mr. Wang, can you hear me?

MR. MICHELEN:  Sorry, Your Honor.  That was Mr. Wang.

THE COURT:  Okay.

MR. MICHELEN:  The first one who answered was Mr. Wang.

THE COURT:  Mr. Zhang, can you hear me?

DEFENDANT ZHANG:  Yes.

THE COURT:  Okay.  Mr. Zhang, I have in front of me a document that's styled waiver of physical presence in court and consent to appear by video or teleconference under the CARES Act.

Have you had an opportunity to go over that document with your lawyer?

DEFENDANT ZHANG:  Yes.

THE COURT:  And you signed it today?

DEFENDANT ZHANG:  Yes.

THE COURT:  And the boxes that are checked reflect that you waive your right to be present in person in the courtroom at sentencing, and that you consent to appear by video teleconferencing; is that correct?

DEFENDANT ZHANG:  Yes.

THE COURT:  Okay.  I'll go ahead and sign and date the document for today, and find that under the CARES Act that it's necessary to conduct these proceedings by video conferencing, given the virus or the pandemic and the defendant's consent.

And, Mr. Wang, likewise, I have a document in front of me for you as well.

Did you have an opportunity to discuss this document with your lawyer?

DEFENDANT WANG:  Yes.

THE COURT:  And you signed it?

DEFENDANT WANG:  Yes.

THE COURT:  And in that document you checked that you waived your right to be present in person in the courtroom for the sentencing hearing and that you consent to

appear by video teleconferencing; is that correct?

DEFENDANT WANG:  Yes.

THE COURT:  So I'll go ahead and likewise sign and date this with today's date, June 4, 2020; and find that it was necessary to conduct these proceedings by way of video conference pursuant to the CARES Act, given the virus, and that this was the most reasonable method of conducting the sentencing hearing.

Okay.  Let's next take up the presentence investigation reports.  Any objections to the reports?

MR. MICHELEN:  None on behalf of Mr. Wang, Your Honor.

MR. FLORES:  Nor on behalf of Mr. Zhang, Your Honor.

THE COURT:  Okay.  And the probation office has calculated an offense level of 4, with a criminal history category I.  And the guideline range is zero to six months; is that correct?

MR. MICHELEN:  Yes, Your Honor.

MR. FLORES:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Zhang, do you want to say anything on your own behalf before sentence is imposed?

DEFENDANT ZHANG:  No.

THE COURT:  Mr. Wang, do you want to say anything on your own behalf before sentence is imposed?

DEFENDANT WANG:  Yes.

THE COURT:  Go ahead.

DEFENDANT WANG:  Respectfully, Judge, first of all, I want to sincerely apologize for the mistakes that I have made.  I'm an only child in my family, and my parents have high price -- paid a high price for me to come here to study.

However, I have made mistake, trouble, and my parents have been worrying about me.  They can barely sleep. Day and night they worry about me.

I miss them so, so much.  I hope that I can go back to them soon and I can make up this for them.  Thank you very much.

THE COURT:  Thank you.  Anything on behalf of either defendant?

MR. MICHELEN:  Your Honor, I would like to make a few arguments on behalf of Mr. Wang.

THE COURT:  Okay.

MR. MICHELEN:  Your Honor, we filed a sentencing memo.  I won't rehash everything that's in there.

In the memorandum I go into his background, who he is.  I provided the Court with letters of support, not just from his mom, but from classmates from the University of Michigan, professors.  I provided the Court with his personal statement when he was applying to the University of Michigan.

And I think all those things -- his transcripts from all of his universities, all of those things, Your Honor, really I think speak to who he is and the kind of kid that he is.  What I want to focus now, Your Honor, on is what he's done since his arrest, Judge.

The moment he was arrested on January 4th, he gave multiple interviews to both the Key West Police Department, the FBI, obviously, Monroe Sheriff's office.  Every time he was asked questions on January 4th before his arrest, he fully cooperated and answered every question they wanted.  He gave them all access to all of his phones, every computer he had on him on that day.

Since the arrest, he has given multiple interviews, answered every question they've asked -- the FBI has asked of him.  He has given, Your Honor, consent to search every electronic device.  He gave consent to search his apartment.  He gave consent to search both his University of Michigan account, personal account, gave them passwords.  He has given consent to search everything.  He's given, again, multiple interviews.

And, Judge, after the six-month investigation, the government agrees that he is not deserving of a maximum sentence.

Judge, there is this idea of relative punishment compared to other cases, Your Honor; and I cited a few of

them in the memo.

But just -- Judge, the woman who was arrested in Mar-a-Lago last year, she went to trial.  She never accepted anything.  To the moment after she was convicted, at her sentencing, did not accept a thing.  She was facing six years in prison.  She got eight months, Your Honor.  Obviously, it wasn't the exact same charges, but it was still trespassing on restricted property; Mar-a-Lago itself.

She lied to federal agents.  She lied to the Secret Service, she became verbally aggressive with them, and still eight months.

The case before Your Honor that Your Honor mentioned at the last sentencing last year, in that case, if I remember correctly, Zhao Qianli, he was circumnavigating perimeter fences.  This is a case, Your Honor, where they drove up to a guardhouse and provided ID, Chinese ID, and at no point was there any attempt by Lyuyou to conceal himself or to hide or to deceive anyone.

And I also mentioned in the memo, Your Honor, a 2008 case where two Chinese nationals arrested at San Francisco International Airport with technology and disks and microchips stolen from an American company, and they admitted that they stole it to benefit the Peoples Republic of China. This wasn't the government assuming that; they confessed to that.  They got charged with economic espionage.  They got

12 months and a day.

So, Your Honor, if we're going to think about relative punishment, Lyuyou has done everything he's been asked to do.  And after the government's investigation, they've concluded, Your Honor, that he does not deserve the maximum sentence.

We are asking you for a six-month sentence, which would mean he would be in custody for about another month.

Judge, aside from everything I've just mentioned, we do have this coronavirus situation.  And if the idea is to try to reduce the prison population of one possible, right -- because not everyone can be released, I know while all my clients would love to be released, not every judge -- not every case, every client can be released.  This is the kind of a case where this is a misdemeanor, Your Honor, and we have the government agreeing that he doesn't deserve the maximum sentence.

He's already sick.  He's already lost weight since he's been at the Monroe County Jail.  And I hate to be so descriptive, but he's had -- and this has been reported since his arrest -- blood in his stool, and he still has blood in his stool.  They've had to do a colonoscopy on him at Monroe County Jail.  He's not -- his stomach is not handling well everything that's going on.

So we have someone who is already not doing great

in terms of health, someone who -- no matter what this Court sentences him to -- is going to have to at some point go into immigration custody for however short of a period. We hope that signing these removal orders, these consents, reduces that time. But we don't really know how much it's going to reduce. And he's going to probably have to go in there at some point.

He's one credit shy of graduating with his master's degree, Judge; one credit. And his parents are paying for his tuition out of pocket, and that's all now out the window. I've been speaking with the general counsel at the University of Michigan. They are open to him potentially finishing that last credit online so that he can at some point get his master's from the University of Michigan, but we don't know.

So, Judge, based on all of that, we're asking the Court for a six-month sentence. Lyuyou's case, his actions, his conduct before and since is distinguishable from all those other cases that we cited, and that's why we're asking Your Honor for a six-month sentence.

THE COURT: Let me ask you: What do you make of the frequency of these cases in this relatively short period of time of individuals all attempting to engage in the same kind of conduct, all of the same nationality? Do you think it's just a coincidence?

MR. MICHELEN: Your Honor, I don't know enough to

be fair.  I don't know everything the FBI knows; but I can read articles, and I do see that this is not the only case where there's Chinese Nationals getting arrested.

What I can tell you, Your Honor, is I've seen the pictures.  And like Mr. Rashbaum mentioned in his case, these pictures are not anything that can't be found online.

Now what I can tell you about Yuhao is -- the elephant in the room is:  Are these guys spies?  Judge, it doesn't make any sense.  And I've met him.  The FBI has met with him multiple times.  If they thought he was a spy, why would the government not ask for the maximum sentence, which is the year?  So I definitely don't think Yuhao Wang is a spy.

I don't think it makes any sense.  He was one credit shy.  I mean, Judge, here's the way I see it.  Let's say the Chinese government is sending young Chinese students to America to spy.  I'm sure it's happened; right?  They're going to give him a University of Michigan education, have him be one credit shy of graduating, and then say:  Go potentially blow your cover driving up to a guardhouse and showing your Chinese ID.  And there goes the entire, you know, Peoples Republic of China's investment into this spy, when he's one credit shy of having his computer engineering degree.  They could have just waited a few more months, he would have had a degree, done some spy work, and go back to

China with a degree.

So whether or not I think it's a coincidence, it's very weird to me.  I understand why it's weird.  I'm sure there are a lot of cases where people are sent to bases.  But in this case, it just doesn't make any sense to waste an engineering degree from a great school, be one credit shy, and say:  Go blow your cover on this dumb mission -- right -- where you're going to just drive up to a guardhouse.  It's weird.

I understand the concern.  I understand why the FBI would be concerned.  I understand why anyone would be concerned, but it doesn't make any sense to me.  And then you look at, you know, if --

Judge, if they're spies, they're not going to be sitting with the FBI for multiple, multiple, multiple debriefs, giving consent to read everything and search everything and look at everything.  They're the worst spies in the world.  And they searched every single electronic, Your Honor, everything.  Consent to search the apartment, e-mail accounts, everything.

So I understand, Judge, I really do.  I've read the articles and:  Why does this keep happening?  But this case, they drove up to a guardhouse.

And there's nothing on Yuhao.  I can only speak to Yuhao because I don't know what was on anyone else's

possessions.  But as far as I know, there was nothing on anybody's phone, computer, any kind of device.  And it just seems like the most inefficient spy work that would have happened because, again, it's clear they are very smart kids, clearly.  They're at University of Michigan getting math-science degrees.  They're not liberal arts studies.  Right?  And what a waste it is to have this kid come over here, get a great education, and be one credit shy and say: Go blow your cover off.  For what?  Right?  To drive up to a guardhouse and drive around.

And the pictures show shoreline, they show the other island -- Fleming Key, I believe -- in the background.  I understand it's an important secure island; I get that.  You can see buildings in the background, Judge.  You can see the same thing you can see on Google Earth.

So whether it's a coincidence, I don't know.  I understand the question.  It is weird.  But what I can tell you is:  What a waste of a spy, if that's what happened here, Judge.  One credit shy.  Why would they blow that?  It just doesn't make any sense.

THE COURT:  Thank you.  Mr. Flores.

MR. FLORES:  Your Honor, almost everything that Mr. Michelen said about Mr. Wang is applicable to Mr. Zhang.  Like Mr. Wang, Mr. Zhang's parents are financing his education.  He's earning a master's degree in architecture at

a prestigious school, the University of Michigan.  We submitted letters of character reference from professors and colleagues at the school.  He's well liked.  He's a respected and talented architecture student, who can basically kiss all of that goodbye because of this stupid mistake that they made.

I agree with Your Honor that it looks weird, you know.  What are these Chinese guys doing going on military bases?  But since the Sigsbee Annex is more of an R&R -- a rest and relaxation and housing base, rather than what we think of when we think of military bases.  I mean if they wanted to take pictures of military assets, you could park on the overpass near Boca Chica's Airbase and take pictures of the jets as they're flying by.  I mean this was an RV park.

And I know there were antennas on the base, but this was different than the Truman Annex where Qianli -- the man that Your Honor sentenced in '18, 2018 -- jumped the perimeter fence.  And I think Mr. Qianli also jumped the perimeter fence and immediately sent off images to China.  These guys didn't send off images anywhere.  They didn't send the images anywhere -- they were all on there -- even though they had the opportunity to.

Mr. Michelen talked about all of the consents.  Mr. Zhang consented to search of all of his electronics, to search of his car in Michigan, search of his apartment in

Michigan, search of his e-mail addresses, search of every single item that the government wanted.

He debriefed with the government and expressed his remorse three different times with them.  The government has hundreds of thousands of e-mails and texts and social media posts, and there's nothing that they can point to that would support the conclusion that they're spies.

I think what they did raises the suspicion that they're spies; but all of the best possible evidence of them being spies would have been found in their electronics, and there was none of that.

He's also waived his right to appeal, his right to appeal the sentence.  He's waived his right to challenge the immigration process.  He's accepted responsibility and expressed remorse multiple times in the debriefings, and so I believe that society would be best served in this matter by a sentence of time served.

THE COURT:  Thank you.  Mr. Kobrinski.

MR. KOBRINSKI:  Your Honor, I filed a sentencing memorandum where I outlined the government's position that Mr. Zhang should be sentenced to the maximum 12 months, and that Mr. Wang should be sentenced to 9 months.

I appreciate Mr. Michelen's arguments on behalf of his client that it should be 6 months.  I think it's reasonable that he's asking at the high end of the guidelines

rather than time served.  But I think that to achieve general deterrence and to promote respect for the law and to reflect that Mr. Wang was relatively less culpable, an upward variance is appropriate; just not as much as what Mr. Zhang should be sentenced to in the government's position.

Now, I take issue with the characterizations that have been made of the values of the availability of what they photographed in its native format in terms of the quality of the images as they existed on the individual devices compared to what's available either on Google Earth or by pulling over on the side of the road outside of an installation.  I don't think that those are accurate arguments, and also it effectively doesn't offer respect for the law with the idea of:  Well, we didn't take good pictures; so, therefore, don't punish us harshly.  I think the characterization is actually wrong, and there's other reasons that these individuals would be wanting to be on the installation as they're taking the photographs.  And ultimately it's not for them to decide whether they should be taking photographs.

And to reflect respect for the law and to achieve general deterrence, the government submits an upward variance is appropriate, Your Honor.

THE COURT:  Thank you.  Anything further?

MR. MICHELEN:  Nothing on behalf of Mr. Wang, Your Honor.

MR. FLORES:  No, Your Honor.

THE COURT:  Okay.  With respect to Mr. Zhang, the Court's considered the statements of all parties, the presentence report which contains the advisory guidelines, and the statutory factors as set forth in Title 18, United States Code, Section 3553(a).

It is the finding of the Court the defendant is not able to pay a fine.

It is the judgment of the Court that the defendant, Jielun Zhang, is committed to the Bureau of Prisons to be imprisoned for a term of 12 months as to Count 3.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of one year as to Count 3.

Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the mandatory and standard conditions of supervised release, which include not committing any crimes, being prohibited from possessing a firearm or other dangerous device, not unlawfully possessing a controlled substance, and cooperating in the collection of DNA.

The defendant shall also comply with the following

special conditions:

Surrendering to Immigration for removal after imprisonment and unpaid restitution, fines, or special assessments as noted in Part F of the presentence report.

It is further ordered, that the defendant shall pay immediately to the United States a special assessment of $25 as to Count 3.

Now that sentence has been imposed, does the defendant or his counsel object to the Court's finding of fact and the manner in which sentence was pronounced?

MR. FLORES:  Your Honor, we object to an above guideline sentence.

THE COURT:  Mr. Zhang, do you understand you have a right to -- you said there was an appeal waiver?

MR. FLORES:  Yes, Your Honor.

THE COURT:  Okay.  With respect to Mr. Wang, the Court has considered the statements of all parties, the presentence report which contains the advisory guidelines, and the statutory factors as set forth in Title 18, United States Code, Section 3553(a).

It is the finding of the Court that the defendant is not able to pay a fine.

It is the judgment of the Court that the defendant, Yuhao Wang, is committed to the Bureau of Prisons to be imprisoned for 9 months as to Count 3.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of one year as to Count 3.

Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the mandatory and standard conditions of supervised release, which include not committing any crimes, being prohibited from possessing a firearm or other dangerous device, not unlawfully possessing a controlled substance, and cooperating in the collection of DNA.

The defendant shall also comply with the following special conditions:

Surrendering to Immigration for removal after imprisonment and unpaid restitution, fines, or special assessments as noted in Part F of the presentence report.

It is further ordered that the defendant shall pay immediately to the United States a special assessment of $25 as to Count 3.

Now that sentence has been imposed, does the defendant or his counsel object to the Court's finding of fact or to the manner in which sentence was pronounced?

MR. MICHELEN:  No, Your Honor.

THE COURT:  Was there an appellate waiver?

MR. MICHELEN:  Yes, Your Honor.

THE COURT:  Okay.  So that takes care of the sentencings.

They both have these judicial orders of removal; right?

MR. FLORES:  Yes, Your Honor.

MR. MICHELEN:  Yes, Judge.

MR. KOBRINSKI:  Your Honor, the government moves to dismiss the remaining counts of these defendants at this time also.

THE COURT:  That will be granted.

Mr. Zhang and Mr. Wang, I have statements from each of you in which you request a judicial order of removal.

Do each of you request today that an order be issued by this Court for your removal to the Peoples Republic of China?

DEFENDANT ZHANG:  Yes.

DEFENDANT WANG:  Yes.

THE COURT:  And do each of you agree to accept a written order of removal as a final disposition of any immigration proceedings and waive any and all rights to challenge any provision of this agreement in any United States or foreign court or tribunal?

DEFENDANT ZHANG:  Yes.

DEFENDANT WANG:  Yes.

THE COURT:  Okay.  Anything further?

MR. MICHELEN:  Your Honor, I would just ask on behalf of Mr. Wang if the Court would consider recommending to the BOP to designate Miami, where he'll serve the remainder of his sentence.

THE COURT:  We'll include that in the judgment of commitment.

MR. MICHELEN:  Thank you, Judge.

MR. FLORES:  And likewise for Mr. Zhang.

THE COURT:  I'll include that in his as well.

MR. KOBRINSKI:  Nothing from the government.

THE COURT:  That concludes these proceedings.

MR. MICHELEN:  Thank you, Your Honor.

THE COURT:  Again, I apologize for you having to wait for as long as you did.

MR. KOBRINSKI:  Thank you for allowing me to participate remotely, Your Honor.

THE COURT:  All right.

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings, noting the government appearing via Zoom, to the best of my ability.

June 24, 2020                    /s/ Vernita Allen-Williams